United States Courts
Southern District of Texas
FILED
OCT 19 2006
Michael N. Milby, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| CANDELARIA C. PONCE, *et al.* | § | |
| | § | CIVIL ACTION NO. G-05-539 |
| v. | § | |
| | § | IN ADMIRALTY – RULE 9(h) (JURY) |
| M/V ALTAIR, *et al.* | § | |

**<u>COURT'S INSTRUCTIONS TO THE JURY</u>**

MEMBERS OF THE JURY:

Now that you have heard all of the evidence and the arguments of counsel, it becomes my duty to give you the Instructions of the Court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in this case. You are not to single out one Instruction alone as stating the law, but must consider the Instructions as a whole. Neither are you to be concerned with the wisdom of any rule stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a Verdict upon any view of the law other than that given in the Instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a Verdict upon anything other than the evidence in the case.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just Verdict regardless of the consequences.

## I. BASIC INSTRUCTIONS

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as is a private individual. The law is no respecter of persons, and all persons, including corporations, stand equal before the law and are to be dealt with as equals in a Curt of justice.

When a corporation is involved, of course, it may act only through natural persons as its agents or employees; and, in general, any agent or employee of a corporation may bind the corporation by his or her acts and declarations made while acting within the scope of his or her authority delegated to him or to her by the corporation, or within the scope of his or her duties as an employee of the corporation.

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and the exhibits admitted into the record.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Now, while you should consider only the evidence in the case, you are permitted to draw

such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness' testimony as to facts within that person's personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions.

Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness you should consider his or her relationship to the Plaintiffs or to the Defendants; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her opportunity to observe or acquire knowledge concerning the facts about which he or she testified; his or her candor, fairness and

intelligence; and the extent to which he or she has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or non-existence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has testified by deposition, or has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony. If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

The rules of evidence provide that if scientific, technical, or other specialized knowledge might assist you in understanding the evidence or in determining a fact in issue, a witness qualified as an exert by knowledge, skill, experience, training, or education, may testify and state his or her opinion concerning such matters.

You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, of if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn answers to questions asked of the witness in advance of trial by one or more attorneys of the parties. The testimony of a witness who, for some reason, cannot be present to testify on the witness stand may be presented in the form of a deposition. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by the jury, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

In a civil action such as this, each party asserting a theory of claim or defense, as hereafter described, has the burden of proving every essential element of that claim or defense by "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim or defense by a "preponderance of the evidence" merely means to prove that the claim or defense is more likely so than not so.

If a preponderance of the evidence does not support each essential element of a claim or defense, then the jury should find against the party having the burden of proof as to that claim or defense.

## II. SPECIFIC LAW APPLICABLE TO THIS CASE

Plaintiffs' claim is asserted under 33 U.S.C. §905(b), a section of the Longshore and Harbor Workers' Compensation Act. In order to prove this claim, the burden is on the Plaintiffs' to establish by a preponderance of the evidence that the Defendants were negligent and that this negligence was a proximate cause of the Decedent's death and consequent damages.

Defendants do not owe a longshore worker such as Decedent the duty to provide an absolutely safe vessel. Rather, in preparing the ship for a cargo operation, the vessel owner must exercise ordinary care in light of the fact that the operation will be conducted by an expert and experienced stevedore. Certain dangers that might be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them. The law recognizes that stevedores may reasonably expect to encounter certain dangers arising from the hazards of the ship's service or otherwise, and, with regard to these dangers, the shipowner may leave them unremedied.

As stated, the Defendants are liable only if it was guilty of "negligence" which was a "proximate" cause of the Decedent's death. "Negligence" is the failure to use reasonable care under the circumstances. A vessel operator such as Defendants must exercise reasonable care before the Decedent's employer, a stevedore, begins its operations on the vessel. This means that the Defendants must use reasonable care to have the vessel and its equipment in such condition that an expert and experienced stevedore would be able, by the exercise of reasonable care, to carry on its work on the vessel with reasonable safety to persons and property. To establish "proximate" cause, the Plaintiffs must show that a negligent act or omission of the Defendants played a part in bringing about or actually causing the Decedent's death, was either a direct result or a reasonably probable consequence of the Defendants' negligent acts or omissions.

As a general matter, the shipowner may rely upon the stevedore employer to avoid exposing the longshoremen to unreasonable danger. Pursuant to 33 U.S.C. §941 and applicable federal regulations, the stevedore employer must provide a reasonably safe place for its longshoremen to work, including the installment, furnishing, maintaining and using of such

equipment such as secured ladders, nets, etc. as will render the workplace reasonably safe, and is responsible for seeing that the longshoremen do their work in a safe way. The shipowner is entitled to expect that the stevedore will carry out the duties that the law imposes under the federal Safety and Health Regulations for longshoring. The shipowner is not required to inspect or supervise the work of the stevedores' longshore employees and is not required to look for dangerous conditions that may arise in areas where they are working. Further, the shipowner is not responsible for things that the stevedore company or its longshoremen employees do or fail to do and is not responsible for their negligence. The responsibility for the safety of the longshoremen in areas where they are working rests primarily on the stevedore.

In summary, as a shipowner, the Defendants have a duty of reasonable care when turning over the ship to the stevedore. Remember that the ship owner is permitted to assume that the stevedore is an expert in its work and experienced in the hazards that are typical of stevedoring work on vessels. The Defendants must use reasonable care to turn the ship over in a condition in which the stevedore can do its work with reasonable safety. Once the vessel has relinquished control over an area of the ship to the stevedore, it is then the primary responsibility of the stevedore to remedy any hazards in that area.

Generally speaking, the Defendants have not breached their duty to turn over a safe vessel if the defect causing the injury is open and obvious and one that the longshoreman should have seen. However, if a longshoreman's only alternatives when facing an open and obvious hazard are unduly impracticable or time-consuming, then the vessel owner may still be held liable.

Even if the hazard was one about which the Plaintiff's employer knew, or would be obvious or anticipated by a reasonably competent stevedore, the Defendant must exercise

reasonable care to avoid the harm to Decedent if the hazard was one which the Defendant actually knew about and about which Defendant knew or should have known that Decedent's employer would not or could not take corrective action and the Decedent could not or would not avoid.

Plaintiffs allege that Defendants M/V Altair, Scarlati Ventures, Inc and B Navi Spa were negligent in one or more of the following particulars:

1. Failing to use reasonable care to have the vessel and its equipment in such condition that an expert and experienced stevedore would be able, by the exercise of reasonable care, to carry on its work on the vessel with reasonable safety to persons or property;

2. Failing to provide an adequate work space for Mr. Ponce and other longshoremen to perform operations necessary to load, unload and secure cargo to the vessel;

3. Failing to provide a cargo boom equipped with a runner guide to prevent excessive slack in the winch runner wire; and

4. Providing a winch cover upon which wire steps had been welded, creating an unreasonable snag hazard to the winch runner wire.

By way of defense to the Plaintiffs' claims, the Defendants deny that there was any negligence on their part which proximately caused the Decedent's death. The shipowner also alleges that, if the accident was caused through the negligence on the part of anyone, it was the negligence of Decedent himself or the negligence of the Decedent and/or his employer, Americargo Transport, Inc., and that such negligence was the sole—the only—proximate cause of the accident.

Unless you find that the Defendants were negligent and that the negligence was a proximate cause of the accident, your verdict must be for the Defendants. If the negligence of the Decedent or of the stevedore or a combination of the two was the sole—the only—proximate

cause of the accident, then the Plaintiffs are not entitled to recover from the Defendants.

The Defendants contend that the Decedent was negligent in the following respects:

1. Failing to keep a proper lookout for his own safety;
2. Failing to perform his job properly;
3. Failing to prevent excess slack in the winch runner wire; and
4. Failure to adequately monitor the winch wire to avoid snagging it.

With respect to the allegation of contributory negligence on the part of the Decedent, it is necessary for the Defendants to show that the Decedent was "negligent" and that such negligence was a proximate cause of the injury. "Negligence" is the failure to use reasonable care under the circumstances. To establish "proximate" cause, the Defendants must show that the act or omission of the Decedent played a substantial part in bringing about or actually causing the death of the Decedent, and also that his death was either a direct result or a reasonably probable consequence of the Decedent's acts or omissions. The burden of proof of this contention is upon the Defendants. The Defendants must prove Decedent's negligence and its causational relationship to the Decedent's death by a preponderance of the evidence.

The Decedent, in performing his work as a longshoreman, had a duty to use reasonable care under the circumstances.

If you find that the Decedent's death was caused solely by his own negligence, then you must return a verdict in favor of Defendants. But, the fact that the Decedent's acts or omissions may have only partially contributed to causing his accident and injury does not prevent the recovery of damages by Plaintiffs. If you find that the accident was due partly to the fault of Decedent; or stated differently, if you find that the Decedent was guilty of contributory

negligence, you are required to determine what percentage his negligence contributed to the accident, this only reduces the amount Plaintiffs are entitled to recover. For example, if you find that the accident was due partly to the fault of the Decedent, and you find that his negligence was ten percent responsible for the accident, then you would fill in this information on the special interrogatory (verdict) form you will be required to complete. Obviously, by using the number ten percent (10%), I do not mean to suggest any amount; you might find one percent or ninety-nine percent, or any percent in-between. On the special Verdict form, there will be a blank for you to insert your findings in this regard, and whatever amount, if any, you find will not prevent the Plaintiff from recovering; the Court will merely reduce the damages that you find proper by the percentage that you insert to be contributory negligence on the part of the Decedent.

In considering the issue of Plaintiffs' damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just, and reasonable compensation for all the Plaintiffs' damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendants. Neither can damages be based on speculation because it is only actual damages—what the law calls "compensatory damages"—that are recoverable.

Compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury—tangible and intangible. They are an attempt to restore the Plaintiffs, that is, to make them whole or as they were immediately prior to Decedent's death.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no others:

1. **Pre-Death Pain and Suffering and Mental Anguish**

Any bodily injury sustained by the Decedent before his death, and any resulting pain and suffering and mental anguish. No evidence of the value of such intangible things as mental or physical pain and suffering has been or need be introduced. In that respect, it is not value you are trying to determine, but an amount that will fairly compensate the Decedent for the damages he suffered before his death. There is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any such award should be fair and just in the light of the evidence;

2. **Lost Earnings**

The estate's loss of earnings of the Decedent from the date of death, less any amount you award for a survivor's loss of monetary support during that period.

3. **Lost Accumulations**

The estate's loss of net accumulations, that is, that part of the Decedent's net income from salary after taxes, including pension benefits (but excluding income from investments continuing beyond death) that the Decedent, after paying personal expenses and monies for the support of the Decedent's survivors, would have remaining as part of the estate if the Decedent had lived his normal life expectancy.

4. **Medical or Funeral Expenses**

Funeral expenses resulting from the Decedent's injury or death that have become a charge against the Decedent's estate or were paid by or on behalf of the

Decedent by one other than a survivor.

5. **Lost Support and Services**

The loss of Abelino Ponce's support and services that the Plaintiffs have sustained or will sustain in the future, if any, because of Abelino Ponce's death. You must determine the duration of any future loss by considering the joint life expectancy of Abelino Ponce and each Plaintiff. Joint life expectancy means the number of years that both Abelino Ponce and each Plaintiff could have been expected to be alive together, considering the ages and life expectancy of each at the time of Abelino Ponce's death.

In evaluating past and future loss of support and services, you must consider Abelino Ponce's relationship to each Plaintiff, the amount of Abelino Ponce's probable net income available for distribution to each Plaintiff and the replacement value of Abelino Ponce's services to each Plaintiff. "Support" includes contributions in kind as well as sums of money. Services means tasks that Abelino Ponce regularly performed that now will be a necessary expense to the Plaintiffs because of Abelino Ponce's death.

6. **Loss of Companionship and/or Society**

The loss of parental or grand-parental care, companionship, instruction, and guidance sustained because of Decedent's death. In addition to the damages that the Plaintiffs Arthur Ponce, Abel Ponce, Jose Ponce, Naomi Ponce, Candelaria Martinez, Abel Rene Ponce, Joel Eugene Ponce, and Paula Gomez Ponce demands, these Plaintiffs also seek damages for loss of society with Abelino

Ponce, which they claim they have suffered as a result of his death.

Loss of society covers only the loss of love, affection, attention, companionship, comfort, and protection the family members of the Decedent have experienced. It does not include loss of support or loss of income that the Plaintiffs sustain, if any. And it does not include pain or suffering or grief or mental anguish.

If you should find that the Plaintiffs have proved a loss of future economic support, any amount you award for that loss must be reduced to present value. This must be done in order to take into account the fact that the award will be paid now, and the Plaintiff will have the use of that money now and in the near future, even though the total loss will not be sustained until later in the future.

In order to make a reasonable adjustment for the present use of money representing a lump-sum payment of anticipated future loss, you must apply what is called a below-market discount rate.

In making that calculation you should first determine the net, after-tax income the Plaintiff would have received during the remainder of his working life, including any increases he would have received as a result of any factors other than inflation. This future income stream must then be discounted or reduced by applying a below-market discount rate which represents the estimated market interest rate the award could be expected to earn over the period of the loss (adjusted for the effect of any income tax on the interest so earned), and then reduced by the estimated rate of future price inflation.

You have heard the testimony of the relevant expert witnesses concerning this calculation and their opinions concerning the appropriate below-market discount rate; and while you are not

bound by those opinions, you may rely upon them as an aid in resolving this issue.

In considering any element of damage to be experienced in the future, you are instructed that you should not take into account any possible effect of present or future inflation one way or another.

Under the law, any award made to the Plaintiff in this case is not subject to Federal or State income tax. Therefore, in computing the amount of damages which you may find the Plaintiff is entitled to recover for past or future lost earnings, the Plaintiff is entitled to recover only the net, after-tax income. In other words, Plaintiff is entitled to recover only "take-home pay" which you find he has lost in the past, or will lose in the future.

Of course, the fact that I have given you Instructions concerning any claim or defense or the issues of damages should not be interpreted in any way as an indication that I believe either party should, or should not, prevail in this case.

## III. DELIBERATIONS AND COMMUNICATION

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the

opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room, you should first select one of your number to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.

A form of verdict has been prepared for your convenience.

**[EXPLAIN VERDICT]**

You will take the Verdict form to the jury room and when you have reached unanimous agreement as to your Verdict, you will have your Foreperson fill it in, date and sign it, and then notify the Marshall, so that you may be returned to the courtroom.

If, during your deliberations, you should desire to communicate with the Court, please reduce your message or question to writing signed by the Foreperson, and pass the note to the Marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time, until you have reached a unanimous verdict.

DONE at Galveston, Texas, this the 19th day of October, 2006.

HONORABLE SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE